Evelyn C. SANDERS, Plaintiff,

v.

The CITY OF NEW YORK, Defendant.

No. 98 CIV. 3374(VM).

United States District Court, S.D. New York.

May 15, 2002.

Evelyn C. Sanders, [Pro se], Jamaica, Kenneth W. Richardson, Irene Donna Thomas, Thomas & Associates, New York, for Evelyn C. Sanders, plaintiffs.

Antoinette Wavene Blanchette, Michael D. Hess, Corp. Counsel of the City of New York, New York, for New York City Human Resources Administration;, Medical Assistance Program, the City of New York, Jason A. Turner, Commissioner, NYC Human Resources Administration, defendants.

### DECISION AND ORDER

MARRERO, District Judge.

### INTRODUCTION

This matter came before the Court for a trial by jury from May 6, 2002 until May 10, 2002, when the jury returned verdicts in favor of defendant, the City of New York (the "City"), on all of plaintiff's claims.

At the close of evidence, plaintiff Evelyn C. Sanders ("Sanders") withdrew her claims against former Commissioner Jason A. Turner, New York City Human Resources Administration ("HRA"), leaving the City as the only remaining defendant. However, at the first of two conferences the Court held with the parties relating to the jury instructions, Sanders sought to add a separate claim for disparate treatment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* ("Title VII"), notwithstanding the fact that Sanders had not submitted a separate charge for that claim in her proposed jury instructions. Nevertheless, the Court agreed that viewing all of the allegations in the second amended complaint as a whole, which was filed *pro se,* a separate charge for the disparate treatment discrimination claim was warranted under the circumstances. Thus, the Court permitted Sanders to put three claims before the jury: discrimination in the terms and conditions of employment, unlawful retaliation, and disparate treatment discrimination all brought pursuant to Title VII.

Upon the conclusion of their respective cases-in-chief, the parties cross-moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The City's motion for judgment as a matter of law is now moot. The jury returned verdicts in favor of the City on all claims. However, when the motions were made, the Court reserved judgment, permitting the jury to deliberate on all of Sanders's claims. Presently before the Court is Sanders's motion for judgment as a matter of law on all of her claims, which,

as a technical matter, remains pending although the jury returned verdicts against her on all those claims.

## STANDARD OF REVIEW

Rule 50 of the Federal Rules of Civil Procedure allows a party to move for judgment as a matter of law at any time before the case has been submitted to the jury. *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir.1999). A court may grant a motion for judgment as a matter of law if there is no legally sufficient evidentiary basis to support the non-moving party's claim or defense. *Id.;* Fed.R.Civ.P. 50(a). In assessing the merits of a Rule 50(a) motion, courts must view the evidence in the light most favorable to the non-moving party—in this case, the City—and draw all reasonable inferences in its favor. *Wimmer*, 176 F.3d at 134.

## DISCUSSION

Applying the relevant standard of review here, the Court finds that any reasonable jury could have concluded that, as a threshold matter, Sanders failed to establish a prima facie case for any of her claims under Title VII. In addition, any reasonable jury could have been persuaded by the overwhelming evidence that the allegedly unlawful actions on the part of the City were taken for legitimate, non-discriminatory reasons. Therefore, Sanders's motion for judgment as a matter of law is denied in its entirety.

All of Sanders's claims, although conceptually distinct, are grounded in Title VII. As such, all of Sanders's claims require a showing of the same core elements as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In view of the plaintiff's claims and the specific circumstances present there, the Supreme Court held in *McDonnell Douglas* that

[t]he complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Assuming that a complainant establishes a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.; see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The elements set forth above are not a rigid, unyielding standard. Every action pursuant to Title VII will differ materially in the specific acts complained of, the type and severity of the unlawful actions alleged and the specific kinds of harm cognizable under the statute. Nevertheless, *McDonnell Douglas* delineated a baseline formulation which has become the starting point for actions pursuant to Title VII. The Court addresses all of Sanders's claims separately below, but the common thread in the analyses is the Court's finding that Sanders's has failed to establish a prima facie case, as enunciated by the Supreme Court in *McDonnell Douglas*, on any of her claims.

## A. DISCRIMINATION IN THE TERMS AND CONDITIONS OF EMPLOYMENT

Sanders's first claim is that the City discriminated against her in the terms and

conditions of her employment. In order to establish a prima facie case of discrimination in violation of Title VII, Sanders must show that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties of her position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination. *See, e.g., Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 311–12 (2d Cir.1997) (citations omitted); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994) (citations omitted).

█ Throughout the trial, the City did not dispute either of the first two elements. As an African American woman, Sanders was a member of a protected class for Title VII purposes, and her performance evaluations never indicated any material deficiencies in her work performance. The City contended, and the Court agrees, that Sanders failed to establish the third and fourth elements of a prima facie case of employment discrimination.

With regard to the third element, Sanders's alleged, *inter alia,* that (1) her employer discriminated against her by permitting her supervisor, John Milioti, to attach an addendum to her 1993 performance evaluation which contained negative comments about Sanders's conduct in the workplace; (2) the City discriminated against her by transferring her to a different office which was a less than ideal work environment and which lengthened her commute by approximately a half hour to perhaps an hour; and (3) the job to which Sanders was transferred carried more clerical duties and a heavier workload than her previous position.

Even standing alone and unrefuted, the Court has serious doubts that the sum total of the evidence on these allegations would be sufficient to constitute an "adverse employment action" within the meaning of Title VII. Courts in this District have repeatedly held that for an employer's action to be adverse, it must rise above mere inconvenience to a dissatisfied employee. The action must cause a materially adverse change in the terms and conditions of employment. *Castro v. New York City Bd. of Education Personnel,* No. 96 Civ. 6314, 1998 WL 108004, *6 (S.D.N.Y. March 12, 1998); *Monica v. New York City Off–Track Betting Corp.,* No. 93 Civ. 6371, 1995 WL 117879, *4 (S.D.N.Y. Mar.20, 1995) (citing *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir.1993)). At most, Sanders managed to establish at trial that she was transferred to another job location which was less appealing and which was accompanied by an alteration of her work responsibilities. These inconveniences, to the extent that they could be viewed as such, do not rise to *materially* adverse changes in the terms and conditions of Sanders's employment.

This conclusion is supported by the testimony properly introduced at trial by the City. First, two City employees testified that the allegedly discriminatory evaluation addendum was expunged from Sanders's personnel file and that, therefore, it could not have formed the basis for any employment action on the part of the City. This evidence was corroborated by the testimony of Celeste Cummings, who testified that the City transferred Sanders in accordance with a City-wide downsizing that followed established rules of relocation based on junior rank and without regard to performance evaluations. Furthermore, the City competently established that the duties about which Sanders complained fell squarely within the responsibilities of employees in her civil service category.

Viewing all of the evidence as a whole, the Court finds that any reasonable jury could have concluded that Sanders failed to establish an adverse employment action within the meaning of Title VII. In addition, because Sanders's evidence of any racial animus was so lacking in substance, a jury could have found that the City's actions did not occur under circumstances giving rise to an inference of discrimination. Therefore, a reasonable jury could have concluded that Sanders failed to establish a prima facie case of discrimination in the terms and conditions of her employment. For these reasons, Sanders's motion for judgment as a matter of law on her claim of employment discrimination is denied.

### B. UNLAWFUL RETALIATION

█ Sanders also claimed that the City retaliated against her in violation of Title VII. In particular, Sanders alleges that the act of placing an addendum to her 1993 performance evaluation and her subsequent transfer, in conjunction with the accompanying changes in the work environment and her job responsibilities, constitute acts of retaliation.

To establish a prima facie case of retaliation in violation of Title VII, Sanders must show that: (1) she participated in an activity protected under Title VII; (2) the City was aware of her participation in the protected activity; (3) the City took adverse action against plaintiff based on her protected activity; and (4) there was a causal connection between the protected activity and the adverse action taken by the employer. *Adeniji v. Administration for Children Services, New York City,* 43 F.Supp.2d 407, 428 (S.D.N.Y.1999) (citations omitted).

There was no dispute at trial that Sanders was engaged in a protected activity when she filed a complaint of racial and gender discrimination with the HRA Equal Employment Office and that the City was aware of her complaint. Sanders's claim, however, fails in light of the third and fourth elements of a retaliation claim. As the Court noted above, a reasonable jury could have concluded that the mere act of placing an addendum on Sanders's performance evaluation was not an adverse action, especially in light of the testimony that the addendum at issue was expunged.

Furthermore, the City presented credible evidence that the only reason for Sanders's transfer was that the City was downsizing its civil service ranks generally and in the process of phasing out the unit to which Sanders was assigned. Sanders's transfer took place pursuant to a set of standard, non-discriminatory rules governing transfers in those circumstances. Therefore, a reasonable jury could also have concluded that Sanders had failed to establish any adverse employment action and any causal connection between the filing of her discrimination complaint and her transfer. For these reasons, the Court found no reason to take this factual inquiry away from the jury and finds no grounds to depart from the jury's verdict now. Sanders's motion for judgment as a matter of law on her claim of unlawful retaliation is denied.

### C. DISPARATE TREATMENT DISCRIMINATION

█ Sanders's final claim under Title VII posits that she was subjected to disparate treatment on account of race and gender. The claim is grounded primarily on Sanders's contention that because she was subjected to an evaluation in December 1993, while her white male colleague John Braccia ("Braccia") was not similarly appraised until February 1994, the mere act of evaluating her constituted actionable disparate treatment discrimination.

The elements of a prima facie case of disparate treatment discrimination under Title VII are similar to those set forth above. Sanders must show that: (1) she is a member of a protected class; (2) she satisfactorily performed her duties; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on membership in the protected class. *See Adeniji*, 43 F.Supp.2d at 424.

Again, Sanders has failed to carry her burden with respect to the third and fourth elements. At the outset, the Court fails to comprehend how the mere act of evaluating Sanders could constitute adverse and disparate treatment if the evaluation took place in the normal course of business. If Sanders again attempts to focus the issue on the addendum, she nevertheless faces the overwhelming evidence that the addendum was expunged and that it could not have been the basis of any employment action. Any reasonable jury could have found these factors to be determinative.

Sanders's claim also fails to establish the fourth element, in that a reasonable jury could have found that the alleged disparate treatment did not occur under circumstances giving rise to an inference of racial or gender discrimination. In a claim of disparate treatment discrimination under Title VII, the rule in this Circuit permits Sanders to raise an inference of discrimination by showing that she was treated differently from another employee outside of a protected class whose situation bore a reasonably close resemblance to Sanders's. *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir.2000). The reasonably close resemblance test requires less than perfect identity of plaintiff's and the favorably treated employee's characteristics, but in this Court's view, the standard obliges Sanders to establish more than superficial similarities and different treatment.

At trial Sanders introduced evidence that Braccia is a white male, who at the time of the alleged events was a supervisor in the same department as Sanders and who was also in a "probationary" period, having just been promoted to that title. Sanders also alleges that she was evaluated in December 1993, while Braccia had not received an evaluation as late as February 1994. These facts, Sanders contends, provide a basis for an inference of disparate treatment discrimination.

Despite the differing timetables for their respective evaluations and the facial similarities between Sanders and Braccia, these comparisons ignore the fundamental differences between them. The City introduced uncontroverted evidence that Braccia, during the time period in dispute, held the position of Supervisor III, while Sanders was a Supervisor II. This distinction is not merely a difference in title. In the scheme of municipal civil service, these designations may be critical in determining the scope of one's duties, workplace responsibilities and standards for evaluations. For instance, in relation to John Milioti, the author of the allegedly negative evaluation addendum, Sanders and Braccia were situated quite differently. Braccia's immediate supervisor was Milioti, while Sanders's was Braccia. One reasonable inference from these facts is that employees were evaluated in a simple bottom-to-top order and Sanders was properly evaluated before Braccia. The analysis of reasonably close resemblance is an issue of fact for the jury, and in light of all the evidence on this issue, the Court is persuaded that a reasonable jury could have found an inference of discrimination absent with respect to Sanders's claim.

For these reasons, Sanders's motion for judgment as a matter of law on her claim

of disparate treatment discrimination is denied.

### D. *THE CITY'S LEGITIMATE, NON-DISCRIMINATORY REASONS*

■ An analysis of each of Sanders's claims, in light of all the credible evidence introduced at trial, convinces the Court that a reasonable jury could have found that Sanders failed to establish a prima facie case under any of the three theories advanced above. On this basis alone, Sanders's motion for judgment as a matter of law should be denied. Nevertheless, the Court feels compelled to underscore the overwhelming evidence presented at trial as to the City's legitimate, non-discriminatory reasons for Sanders's transfer.

Assuming for purposes of this analysis that Sanders had been able to establish a prima facie case for any one of her claims, the burden would then shift to the City to introduce credible evidence of a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. In this case, such evidence was abundant. The City's witnesses established that the addendum to Sanders's 1993 performance evaluation was for all intents and purposes expunged and that the only remaining copy of the addendum resided in a confidential HRA Equal Employment Office file. Furthermore, Sanders's transfer occurred in a City-wide budget crisis that prompted an overall downsizing and eventual dissolution of the specific unit from which Sanders was transferred. The City introduced credible testimony from Celeste Cummings that the transfer was in accordance in all respects with standard civil service transfers based purely on rank and experience. Ms. Cummings further testified that she did not have access to an employee's full personnel file, that she had never seen the addendum to Sanders's evalua-

tion and that she could not have seen it because confidential HRA Equal Employment Office files may not be released for the processing of a standard transfer.

At the close of evidence, Sanders arguably established no more than that a negative addendum was once placed on, and quickly expunged from, an evaluation almost ten years ago; that she was transferred pursuant to a City-wide downsizing to a location which was poorly maintained and which lengthened her commute; and that her transfer was accompanied by modified duties all within the ambit of her civil service rank. During the relevant time period of this dispute, Sanders was never demoted to a lower rank, never suffered a reduction in pay, and continued to work as a civil servant for the City, for which she was compensated in accordance with her rank.

For the sake of argument, then, even if Sanders had been able to establish a prima facie case under Title VII on any of her claims, a reasonable jury could have concluded that the City's evidence of legitimate, non-discriminatory reasons for its actions was simply overwhelming and uncontroverted.

### *CONCLUSION AND ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that Sanders's motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure is DENIED in its entirety.

**SO ORDERED.**