Evelyn C. SANDERS, Plaintiff,

v.

The CITY OF NEW YORK, Defendant.

No. 98 CIV. 3374(VM).

United States District Court,
S.D. New York.

Sept. 6, 2002.

Antoinette Wavene Blanchette, Michael D. Hess, Corp. Counsel of the City of New York, New York City, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Following a five-day trial of this action, the jury returned verdicts in favor of defendant, the City of New York (the "City"), on all of plaintiff Evelyn C. Sanders's ("Sanders") racial and sexual discrimination claims. At the close of evidence, the parties cross-moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The Court reserved judgment on the cross-motions, permitting the jury to deliberate on the merits of Sanders's claims. Subsequently, on May 15, 2002, the Court issued a Decision and Order (the "Decision"), denying Sanders's motion for judgment as a matter of law.[1]

The Court notes that on May 21, 2002, Sanders filed a Notice of Appeal to the United States Court of Appeals for the Second Circuit. Nevertheless, both Sanders and the City have submitted directly to this Court various post-trial motions in connection with this case. The motions currently pending before the Court include: (1) Sanders's renewed motion for judgment as a matter of law pursuant to Rule 50(b), or in the alternative, for a new trial pursuant to Rule 59; (2) Sanders's motion for sanctions in connection with the City's eleventh-hour production of documents relevant to this action; and (3) the City's application for costs against Sanders. Pursuant to Rule 4(a)(4)(A) of the Federal Rules of Appellate Procedure, the Court retains jurisdiction over the Rule 50(b) and Rule 59 motions and thus ad-

Evelyn C. Sanders, Jamaica, NY, Pro se.

Kenneth W. Richardson, Irene Donna Thomas, Thomas & Associates, New York City, for Plaintiff.

---

1. The Decision is reported as *Sanders v. City of New York,* 200 F.Supp.2d 404 (S.D.N.Y. 2002).

dresses all of the pending motions above. *See also Hodge ex rel. Skiff v. Hodge,* 269 F.3d 155, 157 n. 4 (2d Cir.2001) ("the filing of a notice of appeal does not divest the district court of jurisdiction to decide any of the postjudgment motions listed in Fed. R.App.P. 4(a)(4)(A), if timely filed.").

For the reasons set forth below, Sanders's motion for judgment as a matter of law, or in the alternative for a new trial, is denied. Her motion for sanctions is granted in part and denied in part. And the City's application for costs is denied.

### DISCUSSION

#### A. *SANDERS'S MOTION FOR JUDGMENT AS A MATTER OR LAW, OR IN THE ALTERNATIVE, FOR A NEW TRIAL*

When it issued the Decision on May 15, 2002, the Court set forth its rationale for denying Sanders's motion for judgment as a matter of law made before the close of trial pursuant to Rule 50(a). Sanders now attempts to revisit this ruling in a renewed Rule 50(b) application. Whether the motion is made under Rule 50(a) or 50(b), the operative standard is the same. The Court may grant a motion under either Rule 50(a) or 50(b) only if the evidence presented at trial, viewed in the light most favorable to plaintiff, was insufficient to support a reasonable jury finding in defendant's favor. *See McCarthy v. New York City Technical College,* 202 F.3d 161, 165 (2d Cir.2000); *Sanders,* 200 F.Supp.2d at 406.

Sanders's renewed motion under Rule 50(b) is in all material respects identical to her motion under Rule 50(a) made at the close of trial. In essence, Sanders contends that she had established a prima facie case of discrimination with respect to her all claims, that the City failed to rebut her prima facie case with any legitimate justifications, and that, consequently, she is entitled to judgment as a matter of law.

The Court finds no merit in Sanders's contentions. As the Court pointed out in the Decision, any reasonable jury could have found that (1) Sanders had failed to make out a prima facie case of discrimination on any of her claims; (2) the City had persuasively offered legitimate, non-discriminatory reasons for its actions; and (3) consequently, Sanders was not entitled to recover under Title VII, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), on any of her claims. *Sanders,* 200 F.Supp.2d at 406–10. For the same reasons set forth in the Decision, Sanders's renewed motion under Rule 50(b) is denied.

The standard governing a motion for a new trial under Rule 59(a) is substantially similar to the standard for judgment as a matter of law. A district court has "discretion to grant a new trial if the verdict appears ... to be against the weight of the evidence." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (internal quotations and citations omitted). Again, the Court is called upon to decide whether the "weight of the evidence" presented at trial was sufficient to support the verdicts rendered by the jury. In the Decision, the Court found that there were more than sufficient grounds for the jury to rule for the City, and the Court finds no compelling grounds to revisit that conclusion yet again.

In connection with her motion for a new trial under Rule 59(a), however, Sanders includes a number of new arguments, in essence contending that this Court committed a number of errors at trial that also warrants a new trial. None of these new arguments are grounds for a new trial. Most of Sanders's objections to the Court's rulings were addressed in detail on the record of the trial proceedings. For instance, Sanders argues that the Court improperly excluded excerpts from docu-

ments in which certain City employees opined that John Milioti ("Milioti") had violated New York City, State and federal law, as well as agency policy, by retaliating against Sanders in connection with his addendum to Sanders's work evaluation. On several occasions throughout the course of trial, the Court explicitly permitted Sanders to introduce all of the factual evidence in those documents, as well as live testimony, pertaining to the events surrounding Milioti's addendum to Sanders's evaluation. The Court specifically allowed this evidence to be introduced to permit Sanders an opportunity to prove her case based on the facts, circumstances and events surrounding Milioti's actions.

Nevertheless, the Court ordered the redaction of one line in those documents which amounted to a highly prejudicial legal conclusion reached by one employee without regard to any of the applicable legal standards under Title VII. Furthermore, admission of the excerpts could have confused the jury about the ultimate issues of fact that it was called upon to decide— whether Milioti's actions amounted to a violation of Title VII. The possible confusion and prejudice stemming from the excerpts are self-evident. The redacted sentences state the conclusion that Milioti had violated New York City, State and federal law, as well as agency policy. These statements fail to set forth the elements applicable to these various legal claims, the factual findings necessary to substantiate these serious legal conclusions or the distinctions between City, State and federal law, as well as agency policy, which might materially impact the relevant analyses. Under the circumstances, the Court found that the proper result was to permit Sanders to use all available factual evidence to prove her case, while striking the Milioti memorandum's superfluous, prejudicial and confusing legal conclusions.

Sanders also alleges a number of errors with respect to the jury charge. The Court charged the jury as to the applicable law relating to the parties' respective burdens in accordance with *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In so doing, the Court underscored that plaintiff bears the burden of proving intentional discrimination at all times. When the instructions clearly set forth plaintiff's threshold burden, an instruction regarding the parties' respective burdens is not prejudicial. *Sharkey v. Lasmo (AUL Ltd.),* 214 F.3d 371, 374 (2d Cir.2000).

■ Sanders also objects to the Court's denial of a separate charge for a claim under 42 U.S.C. § 1981 (" § 1981"). The Court noted on the record that, in essence, there was no notice of a claim under § 1981. In her amended complaint, Sanders invokes § 1981 solely as a jurisdictional predicate and is not even identified as a distinct claim. The Court noted as well that Sanders's proposed jury instructions also failed to mention a claim under § 1981. More to the point, neither Sanders nor her counsel mentioned the existence of a claim under § 1981 when the Court distributed the jury charge and held the first charge conference. It was not until a subsequent, follow-up charge conference—the last possible moment—that Sanders's counsel first mentioned a claim under § 1981. Although Sanders is correct that her proposed jury instructions were filed when she was a *pro se* plaintiff and that courts should liberally construe the filings of *pro se* plaintiffs, the Court declines to exercise this discretion under the circumstances present here. Doing so would be manifestly unfair to the City, which without any sufficient notice of a distinct claim under § 1981, had no reason to prepare a defense to that allegation

made at the last possible moment in this litigation.

For these reasons, the Court finds no convincing grounds to depart from its conclusions as set forth in the Decision. Sanders's motion for judgment as a matter of law, or in the alternative, for a new trial is denied.

## B. *SANDERS'S MOTION FOR SANCTIONS*

In a separate post-trial motion, Sanders moves for the imposition of sanctions against the City for several deficiencies in the City's document production. In May 1999, Sanders, acting *pro se*, served amended document requests on the City, which requested all documents relating to any investigation conducted by any City agency into Sanders's complaint of discrimination. In due course, fact discovery concluded, and attempts to reopen discovery were denied sometime around March 2000 by Magistrate Judge Theodore H. Katz, to whom this matter had been referred. In late April 2002, approximately two weeks before trial, the City, under circumstances not persuasively explained, produced several documents which clearly would have been responsive to Sanders's amended document request and which ultimately became some of Sanders's core documents admitted at trial.

Sanders alleges that the City's late production prejudiced her in several ways. First, Sanders contends that production of the documents would have facilitated her search for counsel to represent her in this litigation. Second, she believes that the substance of the documents shed light on the involvement of other City employees, such as Ms. Storm Martin ("Martin"). With regard to Martin, Sanders also alleges that the City misrepresented that Martin is retired and living outside the New York area, when in fact, she continues to have an active telephone number in New York City Human Resources Administration.

For its part, the City responds that any prejudice to Sanders from any dilatory production was inconsequential or self-inflicted because Sanders could have sought an adjournment of trial to depose Martin and effectively utilize the documents at issue. Furthermore, the City contends that Sanders was aware of all potential witnesses identified by the documents at issue and that her failure to depose them cannot be attributed to the City. Finally, the City contends that, in actuality, it remains unsure whether these documents had been produced prior to April 2002. Because of the disruption to the New York City Corporation Counsel's Office stemming from the September 11, 2001 terrorist attacks on the World Trade Center, the City claims that it is impossible to know precisely what had already been produced.

There is no need to remind this Court of the disruptions to the City at large after September 11, 2001. Nevertheless, the City's responses unconvincingly attempt to sidestep the critical issue. Under penalty of perjury, both Sanders and her counsel have attested that the City failed to produce the relevant documents before April 2002. The City, by its own admission, cannot be certain what documents it did or did not produce. Therefore, the Court agrees with Sanders that the documents at issue were responsive to her discovery requests, but were not produced within the time allotted for fact discovery. That being the case, the City has failed to address in any meaningful way why it failed to produce these documents in 1999, long before the disruption to its offices.

In *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 267 (2d Cir.1999) (citations omitted), the court held that "[w]hether exercising its inherent power, or acting pursuant to Rule 37, a district

court has wide discretion in sanctioning a party for discovery abuses . . . and for the spoilation of evidence." Furthermore, the court held that "a finding of bad faith or intentional misconduct is not a *sine qua non* to sanctioning a spoilator." *Id.* at 268.

Under the circumstances present here, the Court finds that the City's conduct, although perhaps short of bad faith or intentional misconduct, is sufficiently unresponsive and inexplicable to warrant sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. The City's response that it is not sure whether these documents were produced in 1999 is simply insufficient. Logs of documents produced pursuant to discovery requests are regularly kept in the ordinary course of business in many forms, including electronic and hard copy. It is unnecessary for the City to reconstruct the entire physical file of documents produced to verify what was in fact exchanged during discovery. That Sanders was prosecuting this action *pro se* at the time her discovery demand was made and throughout the bulk of pre-trial proceedings, is also a consideration that should have heightened the City's sensitivity to the significance of timely and responsive disclosure. The City's failure to produce these responsive documents is sanctionable.

■ The Court parts company with Sanders, however, in the amount of sanctions warranted. Sanders alleges that because of the prejudice resulting from the dilatory production, she is entitled to sanctions in the amount of $100,000. Although the City's failure to produce the documents at issue is inexcusable and arguably some harm could have resulted from the eleventh-hour production, the prejudice to Sanders could not amount to anything close to $100,000. First, the documents were in fact produced, albeit two weeks before trial, and became the focus of Sanders's case-in-chief. In the end, after all of the details contained in those documents were placed before trier of fact, the jury rendered verdicts in favor of the City on all of Sanders's claims. Consequently, a reasonable inference that may be drawn from this result is that even if the documents in question had been produced earlier, their availability would not have made a material difference to Sanders's case.

Moreover, in the Decision, the Court found that even with the details of the City's investigation into Sanders's complaint of discrimination, Sanders had failed to establish a prima facie case with regard to any of her claims. In this connection, the contents of the Milioti Memorandum had no bearing; the Court's determination would have been the same with or without the documents. The Court also concurs with the City in that any witnesses identified by those documents had already been identified in prior documents. In light of the circumstances present here, the Court finds that a sanction in the amount of $5,000 is more appropriate to address the City's misconduct and to offset Sanders's costs incurred in filing this motion. *See* Fed.R.Civ.P. 37(c)(1).

## C. *THE CITY'S APPLICATION FOR COSTS*

■ Pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and Local Civil Rule 54.1, the City contends that it is entitled to costs in the amount $563.86 for the deposition transcript of Sanders used at trial. The City's application for costs is denied.

At the outset, even if the application for costs were appropriate at this procedural juncture, the Court would not be inclined to grant the City's application against Sanders, who participated in this litigation as a *pro se* plaintiff until the commencement of the trial. In any event, a bill of costs is usually presented to and issued by

the Clerk of Court. *See* Local Civil Rule 54.1(a). The Court has not yet received such a bill of costs from the Clerk of Court. In addition, Local Civil Rule 54.1 expressly·prohibits an award of costs during the pendency of appeal. Because of Sanders's appeal to the Second Circuit, a bill of costs could not issue at this time.

### CONCLUSION AND ORDER

For the reasons set forth above, it is hereby

**ORDERED** that Sanders's motion for judgment as a matter of law, or in the alternative, for a new trial is DENIED; and it is further

**ORDERED** that Sanders's motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure is GRANTED in part and DENIED in part; defendant City of New York shall pay to Sanders the sum of Five Thousand Dollar ($5,000.00); and it is finally

**ORDERED** that the City of New York's application for costs is DENIED.

**SO ORDERED.**