Evelyn C. **SANDERS**, Plaintiff–Appellant,

v.

**NEW YORK CITY HUMAN RESOURCES ADMINISTRATION, Medical Assistance Program, City of New York and Jason A Turner, Commissioner NYC Human Resources Administration, Defendants–Appellees.**

No. 02–7624.

United States Court of Appeals, Second Circuit.

Argued Sept. 9, 2003.

Decided March 16, 2004.

other court.'').

Irene Donna Thomas, Thomas & Associates, Brooklyn, NY, for Plaintiff–Appellant.

Elizabeth S. Natrella, New York, NY (Michael A. Cardozo, Corporation Counsel of the City of New York, Pamela Seider Dolgow, New York, NY, of counsel), for Defendant–Appellee.

Before: CARDAMONE, JACOBS, and POOLER, Circuit Judges.

CARDAMONE, Circuit Judge.

Plaintiff Evelyn C. Sanders (plaintiff or appellant), an African–American woman employed by the New York City Human Resources Administration (Human Re-

sources or Agency), brought suit against the City of New York (City or defendant), claiming that one of her supervisors discriminated against her on account of her race and gender, and retaliated against her when she filed an internal complaint regarding the alleged discrimination. Either of these actions may trigger liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2000).

During the course of her five-day trial in the United States District Court for the Southern District of New York before Judge Victor Marrero, plaintiff was unable to persuade a jury to find in her favor. Accordingly, on May 15, 2002 the district court entered judgment for defendant. Plaintiff, who had previously moved unsuccessfully for judgment as a matter of law, renewed this motion, and also moved, in the alternative, for a new trial. Judge Marrero denied both motions in an order dated September 6, 2002. *Sanders v. City of New York,* 218 F.Supp.2d 538, 544 (S.D.N.Y.2002). It is from this order that plaintiff appeals.

▇▇▇ Plaintiff asks us to disregard the verdict of the jury that heard the evidence in her case. The right to trial by jury, the roots of which go back to the eleventh century, *see* Richard S. Arnold, *Trial By Jury: The Constitutional Right to a Jury of Twelve in Civil Trials,* 22 Hofstra L.Rev. 1, 6–7 (1993), is preserved in the Seventh Amendment and that guarantee includes assigning fact-finding to the jury and law-giving to judges. *See Baltimore & Carolina Line, Inc. v. Redman,* 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636 (1935). As a result, judges have a very limited role in controlling jury fact-finding, acting only when they think it highly likely that the jury decided wrongly. Edward H. Cooper, *Directions for Directed Verdicts: A Compass for Federal Courts,* 55 Minn. L.Rev. 903, 906 (1970). For that reason, a request like plaintiff's is one a court does not grant lightly. Reviewing the proof in this record, we cannot conclude—as we would need to were we to grant plaintiff's request—that in returning a verdict for the defendant City, the jury relied only on the bases of unsupported surmise and conjecture. ·

## BACKGROUND

Sanders has been working for Human Resources since late 1984. Beginning as a caseworker she worked her way up to the position of Supervisor I. In 1993 she passed the civil service examination required for promotion to the position of Supervisor II. In that capacity, plaintiff was given a new position in the cost containment section of the Manhattan-based medical assistance program. The director of the cost containment section was a white male named John Milioti, and it is his alleged actions that are the subject of plaintiff's grievances against the City.

The job description for plaintiff's supervisor position appears initially to have indicated that she would be supervising three field units and one screening unit. When Sanders reported for work in April 1993, Milioti asked her to give up the screening unit so that it could remain under the supervision of a lower-ranking employee named William Settino. Plaintiff felt pressured to agree to this change, and in place of the screening unit, she ended up supervising a fourth and, ultimately, a fifth field unit.

According to Milioti, this decision was based on legitimate management concerns. Settino had been working in the cost containment section since its inception, and he had helped to create the screening unit. In Milioti's view, Settino had practical expertise that was important to retain. Plaintiff sees what occurred differently. She believes Milioti wanted to keep the screening unit in Settino's hands because

Settino is a white male and plaintiff is a black female. She points out that Milioti had previously filed a lawsuit claiming that minority and female Agency employees were being promoted ahead of him, and she suggests this provides a glimpse into his motives for discriminating against her.

Sanders also alleges her director held meetings exclusively with male staff members between June and September 1993. Milioti denies this allegation and testified that while he held special meetings with three male staff members to discuss a computerized record-keeping system, the participants were chosen based on their expertise in that field and also on office functions, not on their gender. Moreover, he declares he continued to hold regular operational meetings with all of the division's supervisors, including plaintiff and other women.

In October 1993 Sanders filed a complaint with the Agency's in-house office of Equal Employment Opportunity (in-house EEO). Although its investigation turned up insufficient evidence to substantiate her claims, the in-house EEO informed one of Milioti's superiors that Milioti's management style had created a perception of race and gender discrimination that needed to be addressed. Plaintiff claims that Milioti then retaliated against her for having filed the complaint.

The form of retaliation plaintiff first cites is a negative performance evaluation. As a newly-appointed probationary supervisor, Sanders was ostensibly subject to quarterly evaluations during her first year of work. When she received her first evaluation in January 1994 from John Braccia, who held the title of Supervisor III and was her immediate supervisor, she was the only probationary employee in the cost containment section evaluated. Even Braccia himself was not evaluated despite the fact that he too was newly appointed and presumably subject to the same pro-

bationary quarterly evaluations as plaintiff. Further, Sanders' evaluation was based on a list of tasks and standards given to her only a month earlier. While she received generally favorable comments from Braccia, Milioti attached two pages of addendum to the evaluation, criticizing her performance.

She complained immediately to the in-house EEO, which conducted an investigation and later expressed its opinion that the evaluation was made in retaliation for plaintiff's previous complaint. Within two weeks of its having been issued, the evaluation was rescinded, and all copies (other than the one on file with the in-house EEO) were destroyed. According to Milioti, the effect of having no evaluation on file was that plaintiff's performance was presumed to be satisfactory. Indeed, after completing her first year as a supervisor in a provisional capacity in the cost containment section, plaintiff's supervisor position was made permanent.

In September 1994 Sanders was transferred from the Manhattan-based cost containment section into a medical review team located in Brooklyn. Although Sanders retained her rank of Supervisor II, she went from having her own office in a habitable building to having to share an office with six other people in what she asserted was a run-down, vermin-infested building. In addition, her commuting time from home to work increased by more than 30 minutes a day. Sanders believes Milioti orchestrated her transfer to Brooklyn as further retaliation against her for filing the in-house EEO complaint.

After exhausting her administrative remedies, plaintiff filed the present action in the Southern District of New York on May 13, 1998. The case went to trial four years later on May 6, 2002. Plaintiff's complaint named the City and its Human Resources Commissioner, Jason A. Tur-

ner, as defendants. Plaintiff later withdrew her claims against Turner at the close of evidence, leaving only the City as defendant. *Sanders v. City of New York,* 200 F.Supp.2d 404, 405 (S.D.N.Y.2002). The jury was asked to consider whether plaintiff had faced discrimination on account of her race or her gender, and to consider further whether she had been subject to retaliation for filing the in-house EEO complaint. The jury answered all of these questions in the negative. The district court entered judgment for defendant and denied plaintiff's motions for judgment as a matter of law and for a new trial.

## DISCUSSION

On appeal, plaintiff challenges the district court's denial of both her renewed motion for judgment as a matter of law and her motion for a new trial. We treat each of these challenges separately.

### I Judgment as a Matter of Law

#### A. *Standard of Review*

We review denials of motions for judgment as a matter of law *de novo,* viewing the evidence, as the district court was required to, in the light most favorable to the nonmoving party. *Wolf v. Yamin,* 295 F.3d 303, 308 (2d Cir.2002). We reverse only when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or where there is "such an overwhelming amount of evidence" in favor of the moving party that fair minded jurors could not reasonably arrive at a verdict against the movant. *Phillips v. Bowen,* 278 F.3d 103, 108 (2d Cir.2002).

#### B. *Requirements of Plaintiff's Proof Using Circumstantial Evidence*

Title VII makes an employer liable for discriminating against its employees based on race or gender, or for retal-

iating against an employee for having challenged such discrimination. 42 U.S.C. §§ 2000e–2(a), 2000e–3(a) (2000). Courts recognize that most discrimination and retaliation is not carried out so openly as to provide direct proof of it. Accordingly, an aggrieved party may use circumstantial evidence to assert a *prima facie* case of discrimination (or retaliation) by alleging "1) [she] belonged to a protected class; 2)[she] was qualified for the position; 3)[she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft,* 336 F.3d 128, 138, 141 (2d Cir.2003). Naturally, the employee has the burden to prove that his or her employer engaged in such conduct. Once the plaintiff's burden has been met, "the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." *Id.*

We define an adverse employment action as a "materially adverse change" in the terms and conditions of employment. *See Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 446 (2d Cir.1999). To be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry,* 336 F.3d at 138. Examples of such a change include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.*

Having defined adverse employment action, we consider the evidence that appellant thinks entitles her to the relief of judgment as a matter of law. Were legal arguments arrows, the issues appellant raises could be said to have looked fine

when they left the bow of counsel's brief. But when examined at journey's end most of them missed the mark, and none of them landed in the bull's-eye.

### 1. Critical Evaluation

■ Plaintiff asserts that the adverse employment action in her case was the performance evaluation and its critical addendum. But she offered no proof that this evaluation had any effect on the terms and conditions of her employment. On the contrary, the negative evaluation remained in Sanders' file for only two weeks before being destroyed, and her promotion to the rank of Supervisor II was ultimately changed from provisional to permanent. A jury could therefore reasonably find that the evaluation did not, on its own, constitute a materially adverse action by her employer. Cf. Weeks v. New York State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001) (holding that a "notice of discipline" and a "counseling memo" by themselves were insufficient, as a matter of law, to constitute adverse employment action), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108–14, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

■ Further, appellant mistakenly puts reliance on two opinions from our sister circuits: Smith v. Secretary of Navy, 659 F.2d 1113, 1120–21 (D.C.Cir. 1981) and Hashimoto v. Dalton, 118 F.3d 671, 676 (9th Cir.1997). Not only are these cases factually distinguishable from appellant's, but they also come out of the District of Columbia Circuit and the Ninth Circuit, both of which have rejected our materially adverse standard in favor of a broader interpretation of adverse employment action. See Ray v. Henderson, 217 F.3d 1234, 1240–43 (9th Cir.2000) (discussing the circuit split on this issue). More importantly, while a negative job evaluation may constitute adverse employment

action in certain circumstances even in this circuit, cf. Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir.2002), the question here is whether plaintiff's negative job evaluation must constitute adverse employment action as a matter of law. We do not think the employer's action reached that threshold.

### 2. Male–Only Meetings

■ At trial, appellant also maintained that the screening unit dispute and Milioti's allegedly male-only meetings constituted adverse employment action. Although she has not raised these arguments on appeal, we note that neither would have been successful. A reasonable juror could easily find that the exchange of the screening unit for a field unit was no more than an alteration of work responsibilities. See Terry, 336 F.3d at 138. While Sanders' alleged exclusion from critical meetings over a three or four month period might well be materially adverse, a reasonable juror could have credited Milioti's testimony that he continued to include Sanders in operational meetings, and that the meetings that included only male participants were unrelated to her office duties.

### 3. Transfer to Brooklyn

■ Appellant's transfer out of the cost containment section and into an allegedly crowded, run-down, and vermin-infested building might come closer to material adversity. But this too was not raised on appeal. Even if she had raised this argument on appeal, however, there was no evidence other than plaintiff's bare assertions to this effect that the transfer was undertaken for discriminatory or retaliatory reasons. The transfer occurred at a time when city-wide budget cuts had sparked a huge redeployment of personnel within Human Resources. Milioti testified that he played no role in the transfer, and

that the decision was instead taken by the Agency's central personnel office. This was corroborated by a former personnel services director of the Agency, who testified that she was on the committee that oversaw the redeployment of thousands of personnel between 1994 and 1995. She stated that in-house EEO complaints played no role in these redeployments, and that the central personnel office decided whom to transfer based on budget constraints and staff seniority. Certainly a reasonable juror need not have linked the transfer with Milioti's allegedly discriminatory or retaliatory motives.

### C. *Direct Proof Contention*

Plaintiff attempts to side-step the lack of circumstantial evidence to support her cause of action by insisting she offered *direct* evidence of retaliation, and therefore escaped the requirement of proving her case by circumstantial evidence. She cites *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), for the proposition that a plaintiff who is challenging an employer's policy need not show circumstances giving rise to an inference of discrimination when the plaintiff presents direct evidence of discrimination. Although *Trans World Airlines* involved a claim under the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (2000), we realize that its holding is equally applicable to Title VII claims. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002). But plaintiff's direct evidence was quite different from the type of direct evidence discussed in *Trans World Airlines.*

 *Trans World Airlines* dealt with a facially discriminatory policy. In the instant case, plaintiff has introduced written statements by various Agency employees who investigated plaintiff's complaints as employees of the in-house EEO and concluded that plaintiff's supervisor had retaliated against her. Appellant characterizes these as defendant's admissions. While it is true that the statements were "admissions" for hearsay purposes, that is, they were made by defendant's agents and therefore fell outside of the hearsay rule, *see* Fed.R.Evid. 801(d)(2), that does not make them direct evidence of retaliation. In fact, these co-employees' statements are simply their opinions, and they are themselves based on circumstantial evidence. These statements are obviously not binding pleadings or admissions to be used against defendant under Rule 36 of the Federal Rules of Civil Procedure to establish a matter conclusively, nor are they admissions by Milioti with respect to his actual motives.

In sum, the district court did not err in denying plaintiff's motion for judgment as a matter of law because plaintiff failed to make out a circumstantial case or to offer direct evidence of discrimination or retaliation.

### II New Trial Motion

 Plaintiff next declares that even if she is not entitled to judgment as a matter of law, she is at least entitled to a new trial for a number of reasons. The first is that the trial judge allowed defendant's counsel to lead non-hostile witnesses on different occasions. In making this assertion appellant overlooks the fact that the language of Federal Rule of Evidence 611(c) expressing a preference for non-leading questions is only precatory and, that generally trial judges are afforded a large degree of discretion in overseeing the examination of witnesses. *See United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir.1983); Fed.R.Evid. 611 advisory committee's note (1972); 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Feder-*

*al Evidence* § 611.06[1] (2d ed.1999). In any event, the leading questions in this case can hardly be said to have been prejudicial.

■ Sanders' second challenge to the denial of her motion for a new trial is that the district judge erroneously excluded from evidence the statement of an Agency employee who wrote that the actions of plaintiff's supervisor were retaliatory and prohibited by law. We agree with the district judge that this statement was a legal conclusion concerning one of the ultimate issues to be decided by the jury. *See Sanders,* 218 F.Supp.2d at 541. We find no error, therefore, in the trial court's decision to exclude the statement under Federal Rule of Evidence 403 because its potential for unfair prejudice or confusion substantially outweighed its probative value.

■ Appellant's third attack on the denial of her motion presents the only potentially solid ground that plaintiff offers for a new trial. Sanders maintains that the trial judge gave improper instructions to the jury. We review jury instructions *de novo,* and will grant a new trial if we find an error that is not harmless. *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 115–16 (2d Cir.2000). An error is harmless only when we are persuaded it "did not influence the jury's verdict." *Id.* An instruction that improperly instructs the jury on whether the plaintiff has satisfied her burden of proof is generally not harmless because it strikes directly at a plaintiff's claim. *See id.*

While we think a number of the criticisms appellant levels at the jury instructions are without substance, she correctly points out that the *McDonnell Douglas* burden-shifting scheme should not have been charged to the jury. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court held that once a Title VII plaintiff establishes a *prima facie* case of unlawful conduct, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the conduct. If the employer meets this burden, then the burden shifts back to the plaintiff to show that this stated reason was in fact pretext, and to establish a case of forbidden discrimination. *Id.* at 804, 93 S.Ct. 1817. As we have previously stressed, this burden-shifting scheme is a blueprint to guide a district court in the conduct of a trial. *See Gordon,* 232 F.3d at 118. Explaining it to the jury in the charge, we believe, is more likely to confuse rather than enlighten the members of the jury. *Id.*

■ Making the burden-shifting scheme of *McDonnell Douglas* part of a jury charge undoubtedly constitutes error because of the manifest risk of confusion it creates. Having said that, however, such a charge does not necessarily constitute grounds for a new trial. *See Sharkey v. Lasmo (AUL Ltd.),* 214 F.3d 371, 374 (2d Cir.2000). Instead, we must look at the particular facts and circumstances of each case to determine whether the standard for harmlessness is met.

■ In the case at bar, the district court clearly explained to the jury that while the burden of proof may shift according to the *McDonnell Douglas* framework, "ultimately the question you must decide is whether the plaintiff has proven by a preponderance of the evidence that the defendant discriminated against, disparately treated, or retaliated against the plaintiff." Moreover, the jury plainly reached a reasonable conclusion when it answered this question in the negative. Indeed, we find it hard to imagine how the jury could have come to any other conclusion given the dearth of proof supporting essential elements of appellant's cause of action. Consequently, we are not persuad-

ed that the erroneous and superfluous jury *McDonnell Douglas* instruction influenced the jury's verdict. The error was accordingly harmless, and does not necessitate a new trial.

## CONCLUSION

Consequently, for the reasons stated, the district court's order denying plaintiff's motions for judgment as a matter of law, or in the alternative, for a new trial is affirmed.