**Elizabeth GORDON, Plaintiff–Appellant,**

v.

**NEW YORK CITY BOARD OF EDUCATION, Defendant–Appellee.**

**Docket No. 99–9503**

United States Court of Appeals, Second Circuit.

Argued: Oct. 2, 2000

Decided: Nov. 6, 2000

Michael G. O'Neill, New York, NY, for Plaintiff–Appellant.

Alan Beckoff (Michael D. Hess, Corporation Counsel of the City of New York,

Stephen J. McGrath, of counsel), for Defendant–Appellee.

Before: McLAUGHLIN, CALABRESI, and SOTOMAYOR, Circuit Judges.

McLAUGHLIN, Circuit Judge:

## BACKGROUND

Elizabeth Gordon, a black woman, began to work for the New York City Board of Education (the "Board") in 1977. She served as a resource room teacher. In 1993, after her application for an administrative position was denied, she commenced a Title VII action against the Board alleging that she was discriminated against because of her race. See 42 U.S.C. § 2000e et seq.

Before filing her lawsuit, Gordon had received favorable year-end performance evaluations, with all but two classroom observations being rated satisfactory. After she filed suit, however, every classroom observation and all but one year-end evaluation given to Gordon was unsatisfactory.

At a 1996 bench trial, Gordon's discrimination action was dismissed. See Gordon v. Board of Education for the City of New York, No. 96–9011 (S.D.N.Y. July 10, 1996). She was then removed from her teaching position and assigned to the district office of her community school district. She continues to be assigned to the district office, although her supervisors have never given her any job duties. The Board also filed a series of incompetence charges against Gordon, in an effort to strip her of her teacher's certification. All those charges were eventually dismissed.

In response to the Board's actions, Gordon filed the present lawsuit pursuant to 42 U.S.C. § 2000e–3 in the United States District Court for the Southern District of New York (Motley, J.). She alleged that the Board has retaliated against her for filing her discrimination action.

A plaintiff claiming retaliation must prove: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) adverse employment action; and (4) a causal connection between plaintiff's protected activity and the adverse employment action. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998).

At trial before a jury, the Board conceded the existence of Gordon's protected activity and an adverse employment action. As to the knowledge requirement, it admitted that because the Board was the defendant in the previous discrimination action, the Board Superintendent of Gordon's School, Anthony Alvarado, and the Board as a legal entity were aware of Gordon's protected activity.

Nevertheless, specific agents of the Board uniformly testified that they never heard about Gordon's earlier discrimination lawsuit. For example, Pamela Maurice, the District Administrator for Special Education, who had observed Gordon in 1995 and who had given her unsatisfactory ratings, stated that she was unaware that Gordon had filed a discrimination action. Similarly, George Miller, a Special Assistant to Superintendent Alvarado, had also given Gordon unsatisfactory classroom observation ratings. He testified that he was asked by Superintendent Alvarado to observe Gordon in 1996, and did not recall being aware that she had filed a lawsuit against the Board. Finally, Principal Fay Pallen testified that she was unaware of the lawsuit when she gave Gordon an unsatisfactory 1995 year-end rating, and that, although she learned of the prior lawsuit two months before giving Gordon an unsatisfactory 1996 year-end rating, that lawsuit had no bearing on her decision. She also denied being told by Superintendent Alvarado to get rid of Gordon.

Even though there was consistent testimony from Maurice, Miller and Pallen that they personally knew nothing about the earlier lawsuit, there was, again, no dispute that the Board as a legal entity knew about Gordon's protected activity—if for no other reason than that Superintendent

Alvarado knew all about it. In this belief, Gordon submitted the following proposed jury charge to the district court:

> Likewise, I instruct you that the second element of plaintiff's case has been met. There is no dispute that the Board of Education was aware of plaintiff's charge of discrimination and lawsuit. Accordingly, you need not deliberate on this element.

At the first charging conference, the district court told the parties that Gordon's proposed jury instructions were "essentially correct" and that "the only real dispute is the fourth element; that is, [whether] there was a causal connection . . . between the adverse employment [ ] actions taken by the defendant against the plaintiff" and plaintiff's protected activity. At the close of evidence, the district court reiterated that the causal connection issue was "the only question that's going to the jury."

The following morning, before the summations, the district court told the parties that it was also going to "give the jury an interrogatory relating to the defendant's defense" that the Board took the adverse employment actions "not because they were retaliating against her, but because she was, in fact, an unsatisfactory teacher." The district court also advised that it would instruct the jury that, "if they find that the defendant's reasons were not pretextual . . . they would have to return a verdict for the defendant." Lastly, the district court noted that:

> The only defendant in the case, as we know, is the Board of Education. We had questions about whether the board's knowledge was imputable to its agents and we agreed that as to that, the jury could find that the agents had knowledge of the protected activity from circumstantial evidence.

Armed with this information, Gordon's counsel then made the following statement to the jury during closing arguments:

> We don't need to know whether Superintendent Alvarado explicitly told Fay Pallen or other members of his adminis-

trative staff to run my client out of that school because of her lawsuit. We don't have to know, and I don't have to prove whether Superintendent Alvarado even told Fay Pallen about the lawsuit. We don't have to know the details about how this retaliation took place. All we have to show are circumstances from which you can conclude more likely than not that it was retaliatory.

> And that's the fallacy of their argument when they keep putting these people on the stand to say we didn't know about the lawsuit. . . . They didn't need to know about the lawsuit if Alvarado just told them, get rid of Gordon. He didn't have to tell them why. *I don't have to prove that those people knew that they were supposed to run my client out of that school because of the lawsuit,* and they're not going to ask Alvarado why (emphasis added).

Notwithstanding its prior statements and the closing argument made by Gordon's counsel, the district court then distributed a copy of its proposed jury instructions to counsel *after* closing arguments which included the following charge:

> To satisfy the [knowledge requirement], the plaintiff must show that the Board of Education's *agents,* who gave plaintiff unfavorable reviews and annual evaluations and removed her from the classroom . . . knew . . . that plaintiff had filed that lawsuit at the time when they took these adverse employment actions against her (emphasis added).

Gordon immediately objected to this charge on the grounds that: (1) it was an incorrect statement of the law; and (2) Gordon had been prejudiced because her counsel had already argued the exact opposite proposition to the jury in reliance on the district court's earlier statements. The district court noted Gordon's objection for the record, but chose to read the instruction to the jury.

With respect to the element of causation, the district court instructed the jury that:

> [T]he plaintiff must prove that defendant's actions were motivated by a desire to retaliate against plaintiff for bringing a discrimination claim or filing a lawsuit, *and that the reasons offered by the defendants for its actions were pretextual* and were not the real reasons for its adverse employment discrimination. (emphasis added).

Gordon also objected to this charge as an inaccurate statement of the law.

It also gave a jury instruction detailing the mechanics of the *McDonnell Douglas* burden-shifting analysis, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (delineating a framework for trial judges to employ when deciding if Title VII claims should go to a jury). The district court told the jury that, once the Board proffered its non-retaliatory reasons for its actions against Gordon, "the burden shifted back to plaintiff to prove that … defendant's reasons are pretextual, that is, they are not the real or true reasons for the agent's actions and that retaliation is a true reason." Gordon objected to this burden-shifting instruction as unnecessary and confusing to the jury.

The district court then issued a jury questionnaire containing the following interrogatories:

> (1) whether plaintiff proved that the Board's agents who took unfavorable actions against plaintiff after she filed her first lawsuit knew about the suit at the time of their actions; (2) whether plaintiff proved that there was a causal connection between the various adverse actions and her protected activity (the lawsuit); (3) whether it was satisfied that the Board's agents had legitimate non-retaliatory reasons for their adverse actions; and (4) if the first two questions were answered "Yes" and the third one "No", how much in compensatory damages should plaintiff be awarded.

After the jury retired to deliberate, Gordon reiterated her objection to the knowledge instruction, and objected to the instructions outlining the *McDonnell Douglas* analysis and requiring her to prove pretext. Gordon also objected to the related interrogatories submitted to the jury.

The jury eventually returned a unanimous verdict, answering "No" to the interrogatory as to whether Gordon proved by a preponderance of the evidence that the Board's *agents* knew about her suit before they took the adverse employment actions, and "No" to the interrogatory as to whether she established a causal connection between her lawsuit and the Board's actions. However, the jury announced that its members were split on the third interrogatory, which asked whether it was satisfied that the Board's agents had legitimate non-retaliatory reasons for their adverse actions. The jury did not reach the fourth interrogatory concerning damages. The district court then discharged the jury and denied Gordon's motion for a mistrial based on the jury's failure to reach a unanimous verdict on the third interrogatory. Judgment in favor of the Board was then entered.

Gordon now appeals, claiming that the district court erred by: (1) instructing the jury that Gordon had to (a) prove knowledge by the Board's agents, (b) disprove the Board's proffered non-retaliatory reasons for its actions, and (c) work within the *McDonnell Douglas* burden-shifting framework; (2) failing to notify Gordon of its intended charge prior to summation in accordance with Fed.R.Civ.P. 51; and (3) invading the province of the jury by resolving disputed issues of material fact.

For the reasons set forth below, we vacate and remand.

## DISCUSSION

We review claims of error in jury instructions *de novo*. *See LNC Invest-*

*ments, Inc. v. First Fidelity Bank, N.A. New Jersey,* 173 F.3d 454, 460 (2d Cir. 1999). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.* (internal quotation marks omitted). "An erroneous instruction requires a new trial unless the error is harmless." *Id.* An error is harmless only if the court is convinced that the error did not influence the jury's verdict. *See id.* at 462. If an instruction improperly directs the jury on whether the plaintiff has satisfied her burden of proof, "it is not harmless error because it goes directly to the plaintiff's claim, and a new trial is warranted." *Id.* (internal quotation marks omitted).

## I. *The district court's charge was erroneous*

Gordon contends that the district court erred by instructing the jury that she needed to: (1) prove that the Board's agents had prior knowledge of her lawsuit; (2) prove that the Board's stated non-retaliatory reasons for its conduct were not true; and (3) work within the *McDonnell Douglas* burden-shifting framework. Gordon is correct.

### A. *Gordon was not required to prove knowledge by the Board's agents*

■ As noted earlier, to establish a *prima facie* case of retaliation under Title VII, an employee must show that: "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993). Generally, "[i]t is the judge, not the jury, who must decide whether [a] plaintiff has satisfied the requirements of *McDonnell Douglas's* minimal version of a *prima facie* case,"

*Sharkey v. Lasmo (AUL Ltd.),* 214 F.3d 371, 374 (2d Cir.2000); when a retaliation case does go to the jury, the jury's task is simply to determine the ultimate question of whether the plaintiff met her "burden of proving that the defendant was motivated by prohibited [retaliation]," *id.; see also Cabrera v. Jakabovitz,* 24 F.3d 372, 382 (2d Cir.1994).

■ With respect to the second required element, both parties have conceded that the *Board, qua* board, knew of Gordon's protected activity. In the district court's jury charge, however, the court went further. It instructed the jury that "[t]o satisfy the [knowledge requirement], the plaintiff must show that the Board of Education's *agents* [*viz.,* Maurice, Miller and Pallen] ... knew" of Gordon's protected activity (emphasis added). Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity. *See id.* (plaintiff established a *prima facie* case because the Sears corporation was aware of her EEOC complaint); *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1178 (2d Cir.1996) (finding knowledge requirement "easily proved" because the corporate entity was aware of plaintiff's complaints); *Alston v. New York City Transit Auth.,* 14 F.Supp.2d 308, 311 (S.D.N.Y.1998) ("In order to satisfy the second prong of her retaliation claim, plaintiff need not show that individual decision-makers within the NYCTA knew that she had filed .... [an] EEOC complaint."). Accordingly, to the extent that the jury needed to consider whether Gordon had proven even her *prima facie* case of retaliation, the charge given required more of Gordon than was necessary to satisfy the minimal requirements of *McDonnell Douglas. Cf. Cabrera,* 24 F.3d at 382 (noting that the jury should be charged that one basis for inferring discrimination is plaintiff's proof of her *prima facie* case

combined with the jury's disbelief of defendant's explanation for its actions).

■ The Board though, contends that to satisfy the *fourth* required element of *causation*, a plaintiff must show that the corporate *agents* who carried out the adverse action knew of the plaintiff's protected activity, and that therefore Judge Motley's jury charge was correct. The Eleventh Circuit has recently held as much. *See Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197–98 (11th Cir.1997). This Court, however, has consistently held that proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant. *See Cosgrove*, 9 F.3d at 1039.

■ The lack of knowledge on the part of particular *individual agents* is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity or disparate treatment. *See Alston*, 14 F.Supp.2d at 312–13. A jury, however, can find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge. *See id.* at 311. This is so, moreover, regardless of whether the issue of causation arises in the context of plaintiff's satisfaction of her *prima facie* case or as part of her ultimate burden of proving that retaliation "played a motivating role in, or contributed to, the employer's decision." *Renz v. Grey Advertising, Inc.*, 135 F.3d 217, 222 (2d Cir.1997)

Accordingly then, to the extent that the district court charged the jury that the very *agents* of the Board who engaged in retaliatory actions against Gordon had to know of her protected activity, it erred.

B. *Gordon was not required to disprove the Board's proffered non-retaliatory reasons for its actions*

■ The district court's instruction was also erroneous insofar as it imposed on Gordon the burden of proving the falsity of the Board's stated reasons for its adverse actions. Under the 1991 amendments, Title VII "is violated when a retaliatory motive plays a part in adverse employment actions ... whether or not it was the sole cause." *Cosgrove*, 9 F.3d at 1039 (a violation occurs whenever there is "retaliatory animus, even if valid objective reasons for the discharge exist"); *see Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir.1997) ("Title VII plaintiff can prevail by proving that an impermissible factor was a 'motivating factor,' without proving that the employer's proffered explanation was not some part of the employer's motivation."). It is therefore now settled that a plaintiff in a Title VII action need not disprove a defendant's proffered rationale for its adverse actions in order to prevail. *See Fields*, 115 F.3d at 120. "The critical question is whether a plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated or retaliated against the plaintiff for engaging in protected activity." *Cosgrove*, 9 F.3d at 1039 (internal quotation marks omitted).

We have previously considered jury charges regarding a plaintiff's burden in proving retaliation and stated that such a charge must inform the jury that there are two distinct ways for a plaintiff to prevail—"either by proving that a discriminatory motive, more likely than not, motivated the defendants or by proving both that the reasons given by the defendants are not true and that discrimination is the real reason for the actions." *See Fields*, 115 F.3d at 121 (internal quotation marks

omitted). Here, the district court's charge only instructed the jury as to the second method of proof of retaliation and failed to convey to the jury that Gordon could have prevailed merely by showing that retaliation was one of a number of motivating factors. *Cf. Renz,* 135 F.3d at 222–23 (jury charge regarding pretext erroneous because it risked inducing jury to believe that plaintiff was required to prove that impermissible factor was the sole motivation behind employer's decision to fire her).

Accordingly, the district court erred insofar as it instructed the jury that Gordon was required to prove *both* that the Board's proffered non-retaliatory reason was pretextual *and* that a retaliatory reason motivated the Board's adverse employment actions.

C. *The jury should not have been informed of the McDonnell Douglas burden-shifting framework*

■ In the past, this Court has cautioned that "trial judges should not 'import[ ] uncritically' language used in the traditional . . . *McDonnell Douglas* formulation into jury charges because such language—developed by appellate courts for use by judges—is 'at best irrelevant, and at worst misleading to a jury.'" *Renz,* 135 F.3d at 223 (quoting *Cabrera,* 24 F.3d at 380). The *McDonnell Douglas* burden-shifting framework exists to assist a trial judge in her role "as a determiner of whether a case meets the legal requirements for decision by a fact-finder . . . ." *Cabrera,* 24 F.3d at 380. A jury, on the other hand, acts only as a fact-finder.

In an employment discrimination or retaliation case, the job of the jury is simply to decide whether an impermissible factor was a motivating factor in the adverse employment action. The jury therefore does not need to be lectured on the concepts that guide a judge in determining whether a case should go to the jury. *See id.* In this case, these concepts included discussions of burden shifting and pretext—issues that were simply not the province of the jury. The shifting burdens

in a *McDonnell Douglas* situation are akin to the operation of evidentiary presumptions, and as Learned Hand has observed, "[i]f the trial is properly conducted, the presumption[s] will not be mentioned at all . . . ." *Alpine Forwarding Co. v. Pennsylvania R.R. Co.,* 60 F.2d 734, 736 (2d Cir.1932).

Therefore, when the district court included these concepts as part of its jury charge by using the *McDonnell Douglas* framework, it created a distinct risk of confusing the jury. It could easily have led the jury astray from its role—merely to decide whether an impermissible factor was a motivating factor in the adverse employment action in question.

II. *The district court erred by failing to notify Gordon of its intended charge prior to summation*

■ Gordon also argues that the district court failed to comply with Fed. R.Civ.P. 51 by failing to notify Gordon of its intended charge prior to summation, and thus committed reversible error. Gordon is, again, correct.

Rule 51 of the Federal Rules of Civil Procedure provides in pertinent part that:

[a]t the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests *prior to their arguments to the jury* (emphasis added).

The purpose of this rule is to allow both parties to mold their closing arguments to the points of law that will be explained in the final jury charge. *See Wiedersum Associates v. National Homes Const. Corp.,* 540 F.2d 62, 65–66 (2d Cir.1976). Failure to abide by this mandate is reversible error where counsel is "hindered in [his] ability to present summations which fully deal[ ] with the issues to be placed before the jury." *Id.* at 66.

In this case, the district court not only failed to inform Gordon of its intended

jury charge regarding the need to prove individual knowledge on behalf of the Board's agents, it had—until the case was being submitted to the jury—consistently stated that the knowledge element was *not* at issue and that Gordon's proposed jury instruction was correct. As a result, Gordon's counsel argued a theory to the jury that was diametrically at odds with the eventual instruction given by the court. This error was prejudicial, and therefore reversible error, because it destroyed counsel's credibility with the jury and Gordon's ability to direct the jury's attention to the appropriate evidence to decide her case.

## CONCLUSION

We find that the district court committed reversible error by giving instructions to the jury that failed to convey the correct legal standards and by failing to inform counsel of its intended instructions prior to closing statements. We express no opinion on the parties' remaining contentions. Accordingly, we VACATE the order dismissing plaintiff's complaint and REMAND for a new trial.