Russell ANDERSON, Jr., Plaintiff,

v.

DELPHI AUTOMOTIVE SYSTEMS CORP. doing business as Delphi Energy & Engine Management Systems, Defendant.

No. 01–CV–6417L(F).

United States District Court, W.D. New York.

Jan. 13, 2004.

Samuel F. Prato, Rochester, NY, for Plaintiff.

James C. Holahan, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Russell Anderson, Jr. ("Anderson"), filed this action alleging race discrimination in employment by his employer, Delphi Automotive Systems Corp. (hereinafter "Delphi" or "the Company"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Delphi now moves for summary judgment. For the reasons stated, Delphi's motion is granted and the complaint is dismissed.

Anderson had been employed by Delphi, or its predecessors, for twenty-three years when he was fired on September 26, 2000. Anderson was fired, with over a dozen other employees, for use of illegal drugs on company premises, in violation of plant rules. Anderson's termination, and the other employees', occurred at the end of a multi-year investigation into drug activity at the Rochester plant. Approximately seven months after his termination, Anderson filed a complaint with the EEOC alleging discrimination. The EEOC made no finding of discrimination but issued plaintiff a right-to-sue letter and this complaint was filed August 20, 2001.

In his complaint, Anderson claims that he was fired because he is African–American and in retaliation for his having filed grievances against Delphi. He also alleges that he was denied several promotions from 1998 to 2000.

There are several reasons why summary judgment is appropriate at this juncture.

## STATUTE OF LIMITATIONS

I agree with Delphi's contention that some of the claims advanced by Anderson must be dismissed as time-barred. Anderson's EEOC complaint was filed April 10, 2001. The statute, 42 U.S.C. § 2000e–5(e), mandates that claims for dis-

crimination are limited to events that occur within 300 days of the filing of the required charge with the EEOC. Because plaintiff filed the charge on April 10, 2001, June 13, 2000 is the cut-off date for claims of discrimination. Therefore, alleged vacancies and failures to promote that occurred from 1997 through June 2000 are time-barred by statute.

 There is no basis to avoid that by relying on the continuing violation theory. First of all, in the Second Circuit, this doctrine is not favored. *See, e.g., Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (holding that the continuing violation theory is a limited exception that applies only in cases involving specific discriminatory policies or mechanisms); *Curtis et al. v. Airborne Freight Corp.*, 87 F.Supp.2d 234, 244 (S.D.N.Y.2000) (collecting cases) ("As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor."). Second, the facts here do not justify reliance on the continuing violation theory. To the extent

that Anderson can establish that he applied for such positions, the Company's decisions related to his applications are discrete acts and each one must be considered separately for purposes of the statute of limitations. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (failure to promote and denial of transfers are discrete acts of discrimination that are not amenable to continuing violation exception). Here, plaintiff asserts that the Company either failed to acknowledge his applications or denied him promotions to various positions, the last being Tool Room Coordinator in April 2000. Because these acts fall outside the 300–day time-period for filing charges with the EEOC, plaintiff's claims based on the failure to promote or act on his applications are dismissed.[1]

## TERMINATION

Plaintiff was terminated from employment on September 26, 2000, as a result of

---

1. There is reference in the record to the fact that plaintiff's last application to the position of Tool Room Coordinator may have been as late as August 2000, thereby making it a timely claim. *See* Pl. Dep. at 69, Ex. F, Dkt. # 24; Amendments to Pl. Ans. to Interrogatories at ¶ 1(b)(5) Ex. E, Dkt. # 24. However, in plaintiff's affidavit in opposition to the Company's motion, as well as in plaintiff's notes related to that application, he states that he applied in April, not August, 2000. *See* Pl. Aff. at ¶ 18, Dkt. # 24; Pl. Notes, Ex. L at 21A, Dkt. # 24. The inconsistency related to the timing of this position, however, is of no consequence because the Company's failure to transfer plaintiff to it cannot be considered an "adverse employment action" within the meaning of Title VII.

 Only those discriminatory acts that result in a materially adverse change in the terms and conditions of employment are actionable. *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000). Here, plaintiff acknowledged that the Tool Room Coordinator position was an hourly wage assignment that would not have involved a change in pay

or benefits. Pl. Dep. at 82, Ex. F, Dkt. # 24. Further, Karen Shed, the Associate Administrator of Salaried Personnel stated that hourly job assignment titles, like Tool Room Coordinator, do not have any significance for contractual, seniority or payroll purposes. Shed Aff. at ¶ 13, Dkt. # 20. Therefore, because plaintiff suffered no adverse employment action as a result of not being placed in this position, his claim must fail, irrespective of whether it is timely. *See Pimentel v. City of New York*, No. 00 Civ. 326(SAS), 2002 WL 977535, *4 (S.D.N.Y. May 14, 2002), *aff'd* 74 Fed. Appx. 146 (2d Cir.2003) (plaintiff could not show an adverse employment action where there was no loss of salary, benefits, seniority, tenure or promotion opportunities, and the requested transfer would not have improved the terms and conditions of her employment). Furthermore, there is a complete lack of evidence that Anderson was denied any position on account of his race. There is no direct or circumstantial evidence upon which a jury could determine that the denial was occasioned by Anderson's race.

the criminal investigation into drug use at the Delphi plant on Lexington Avenue, Rochester, New York. Anderson, who is black, was discharged along with thirteen co-workers, ten of whom were white. Plaintiff's claim concerning his discharge is that he was terminated not because of the drug investigation but because of his race and in retaliation for his complaints to management prior to that time.

There are several difficulties with this. First of all, plaintiff cannot dispute that the Company received reports from an undercover individual who prepared statements indicating that Anderson was involved on several occasions with drug use on the premises. The terminations of the employees were well publicized and the stated reason as to all of them was for violating Company policy concerning drug use. Well after the termination, a Worker's Compensation Judge did rule against the Company in its challenge to plaintiff's receipt of benefits. Although the Worker's Compensation decision questioned the reliability of the undercover officers' findings, that is not a basis to find that the Company's termination action was a pretext for some discriminatory animus. At the time the Company made the decision to terminate Anderson and the others, the Company had investigative reports, several of them, indicating illegal activities. The decision to terminate must be judged at that time, not in hindsight. Ultimately, of course, the question is not whether the employer's decision was a wise one, but whether it was motivated by some impermissible, discriminatory purpose. There is no evidence here, save for plaintiff's speculation, that the basis for termination, use of drugs, was pretextual.

 The general principles regarding summary judgment pursuant to Rule 56 apply equally to discrimination actions. *See Reeves v. Sanderson Plumbing Prods.,*

*Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (reiterating "that trial courts should not 'treat discrimination differently from other ultimate questions of fact.' "). I analyze plaintiff's discrimination claims pursuant to the familiar *McDonnell Douglas* burden-shifting rules. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Even assuming that plaintiff can establish a *prima facie* case of discrimination, there can be no doubt that Delphi had advanced a legitimate, non-discriminatory reason for its decision to terminate Anderson. A plaintiff's speculation that the decision must have been made for a discriminatory reason is not sufficient. If the employer satisfies its burden of production, "to defeat summary judgment ... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational trier of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003) (quoting *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997)). Plaintiff has failed to adduce sufficient evidence that a rational jury could conclude that discrimination was a motivating factor in the Company's decision to terminate him.

 Plaintiff's retaliation claim must also fail. Plaintiff has failed to establish a *prima facie* case because he cannot show that he participated in a protected activity. Plaintiff conceded in his discovery responses that he never complained of discrimination either to the management of Delphi or to the EEOC, or any other entity, prior to his termination in September 2000. To establish a *prima facie* case of retaliation, plaintiff must show (1) that he participated

in an activity protected by Title VII; (2) that Delphi knew of that activity; (3) that plaintiff suffered an adverse employment action; and (4) that a causal connection between plaintiff's protected activity and the adverse employment action exists. *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir.2000). Here, he has failed to make that showing. Obviously, the EEOC complaint in this case was filed well after plaintiff was terminated and there is no other evidence of any complaint of discrimination. This appears to be little more than an after-the-fact effort to muster reasons why his termination was for reasons other than as stated by the Company.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (Dkt.# 20) is granted, and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.