09-0675-cv
Kercado-Clymer v. City of Amsterdam

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 25th day of March, two thousand ten.

Present:
      RALPH K. WINTER
      ROBERT A. KATZMANN,
            *Circuit Judges*,
      JED S. RAKOFF,
            *District Judge*.[*]

_____

ANGELITA KERCADO-CLYMER,

      *Plaintiff-Appellee*,


          v.                            No. 09-0675-cv

CITY OF AMSTERDAM,

      *Defendant*,

THOMAS V. N. BROWNELL, as Chief of the Police of the City of Amsterdam and in his Individual Capacity,

_____

[*]  The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

*Defendant-Appellant.*[**]

_____

For Plaintiff-Appellee:         JAMES B. TUTTLE, The Tuttle Law Firm, Latham, NY

For Defendant-Appellant:        CARRIE MCLOUGHLIN NOLL, Pennock, Breedlove & Noll, LLP, Clifton Park, NY


Appeal from the United States District Court for the Northern District of New York (McCurn, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the decision of the district court is **REVERSED** in part and **AFFIRMED** in part.

Defendant-Appellee Thomas Brownell appeals from a decision of the United States District Court for the Northern District of New York (McCurn, *J.*) denying his motion for summary judgment based on qualified immunity. Brownell contends that even accepting Plaintiff-Appellee Angelita Kercado-Clymer's version of the facts and drawing all inferences in her favor, he is entitled to qualified immunity as a matter of law on Kercado-Clymer's discrimination and retaliation claims. We assume the parties' familiarity with the facts, procedural history, and scope of the issues presented on appeal.

This case is before us on interlocutory appeal from the district court's Memorandum Decision and Order denying Brownell's motion for summary judgment based on qualified immunity. Because Brownell accepts Kercado-Clymer's version of the facts for the purpose of this appeal, we have jurisdiction to hear this appeal. *See Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985); *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996). Qualified immunity shields public

_____

[**] The Clerk of the Court is directed to amend the official caption as set forth above.

officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The district court denied Brownell's motion for summary judgment based on qualified immunity with respect to Kercado-Clymer's claims that he created a hostile work environment and retaliated against her for complaining of his discrimination, concluding that disputed issues of material fact precluded summary judgment. We review the district court's denial of a summary judgment motion based on qualified immunity *de novo*. *Finigan v. Marshall*, 574 F.3d 57, 61 (2d Cir. 2009).

We conclude that the district court erred when it denied Brownell qualified immunity on Kercado-Clymer's hostile work environment claims. Kercado-Clymer alleges that Brownell created a hostile work environment based on her gender by making several sexually and racially derogatory statements and by denying her desk duty during the week, disciplining her for driving the wrong way down a one-way street, and denying her overtime opportunities. To make out a hostile work environment claim, Kercado-Clymer must show that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). Because Kercado-Clymer's hostile work environment claim is a product of both sex-specific verbal abuse and other adverse treatment, her task in showing that the conduct at issue was discrimination *because of sex* is made more difficult. *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001). "To demonstrate that all of the alleged abuse was suffered on account of sex, [she] may either show that the sex-based verbal abuse indicated that other adverse treatment was

also on account of sex, or resort to circumstantial proof that the other adverse treatment that was not explicitly sex-based was, nevertheless, suffered on account of sex." *Id.* at 621-22.

Here, while Kercado-Clymer argues that she was subject to sexual harassment on a regular basis, she only points to a few incidents of facially sexual harassment over a thirteen year period—Brownell's comment about raping his wife, his remarks about her hair and her relationship with her husband, and the inappropriate postcard he sent to the precinct. The other incidents alleged by Kercado-Clymer as contributing to the hostile work environment were not facially related to sex. Even taken together, however, while certainly highly offensive, these instances are far less severe or pervasive than those for which we have concluded that a reasonable trier of fact could find a hostile work environment. *See, e.g.*, *Raniola*, 243 F.3d at 618-22; *Howley v. Town of Stratford*, 217 F.3d 141, 148-49 (2d Cir. 2000). To be denied summary judgment on qualified immunity, an official must violate clearly established law. *Harlow*, 457 U.S. at 818. We conclude that Brownell's actions, while patently inappropriate, did not violate clearly established law.

With respect to Kercado-Clymer's retaliation claims, however, we conclude that the district court properly denied Brownell summary judgment. To establish a prima facie case of Title VII retaliation, a plaintiff must show (1) "participation in a protected activity known to the defendant," (2) "an employment action disadvantaging the plaintiff," and (3) "a causal connection between the protected activity and the adverse employment action." *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 123 (2d Cir. 2008).[1] Any action that

---

[1] The district court correctly dismissed Kercado-Clymer's Title VII claims against Brownell in his individual capacity because under Title VII individual supervisors are not subject to liability. *See Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). Individual

"could well dissuade a reasonable worker from making or supporting a charge of discrimination" may constitute an adverse employment action supporting a claim for retaliation. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Accepting Kercado-Clymer's version of the facts, she satisfies the prima facie requirements. First, she filed a complaint with the New York Division of Human Rights on March 20, 2006, a protected activity, and it is uncontested that Brownell knew of it. Second, a month after she filed the complaint, Brownell caused Kercado-Clymer to receive a counseling memorandum and then several months later he initiated disciplinary charges against her for driving the wrong way down a one-way street leading to her loss of accrued vacation time. He also banned her from desk duty during the week. A reasonable trier of fact could find that the counseling memorandum, disciplinary charges, loss of accrued vacation, and ban from desk duty could all dissuade a reasonable worker from making or supporting a charge of discrimination. See *White*, 548 U.S. at 57. Third, a trier of fact could find a causal connection between the complaint and the adverse actions because they were close in time, and there was testimony that while 99 percent of officers had on occasion driven the wrong way down a one-way street, only Kercado-Clymer was disciplined for doing so. *See Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d

---

liability, however, may lie under the New York Human Rights Law ("NYHRL") where, as here, the individual actually participates in the conduct giving rise to the discrimination claim. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). We apply federal standards of proof to discrimination claims brought under the NYHRL. *Mandell*, 316 F.3d at 377. Further, a section 1983 claim alleging discrimination in violation of a person's right to equal protection may be brought against an individual, and Title VII law is utilized to evaluate such claims. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Thus, although Kercado-Clymer's Title VII claims against Brownell have been dismissed, Title VII law is used to evaluate her claims brought under the NYHRL and section 1983.

111, 117 (2d Cir. 2000) ("[P]roof of causation can be shown . . . indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct."). This conclusion is only bolstered by Brownell's statements to the press, such as that Kercado-Clymer is "a chronic complainer," "professional victim," and "one of [his] worst employees" who "blatantly lied," "was never qualified to be hired," "has always demanded special treatment," "and can't be trusted," following her filing of this suit, and the testimony of a male officer that Brownell has a reputation for being vindictive. *See id.* (holding that causation may also be shown by "evidence of retaliatory animus directed against the plaintiff by the defendant").

Finally, the right at issue was clearly established at the time of the adverse employment action. *See Galdiere-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 291-92 (2d Cir. 1998); *see also Terry v. Ashcroft*, 336 F.3d 128, 144 (2d Cir. 2003) ("discipline can be retaliatory if done to punish an individual for complaining"); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (holding that "negative evaluation letters, express accusations of lying, [and] assignment of [less desirable duties]" may be considered adverse employment actions (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999))).

The district court also properly denied Brownell's motion for summary judgment with respect to Kercado-Clymer's claim of retaliation in violation of the First Amendment. To establish a First Amendment claim of retaliation, a public employee must show that "(1) [her] speech addressed a matter of public concern, (2) [s]he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action."

*Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003)). First, Kercado-Clymer presents evidence that in August 2005 she spoke with a City attorney about her own and others' complaints as part of an investigation of Brownell instigated by the City. This speech addressed a matter of public concern. *See Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121, 125 (2d Cir. 2005) ("[W]hen a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern."). Second, as explained above, she suffered an adverse employment action. Third, to establish causation, Kercado-Clymer "must show that the protected speech was a substantial motivating factor in the adverse employment action." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006) (internal quotation marks omitted). While causation is not as clear here as in Kercado-Clymer's equal protection retaliation claim because the adverse actions did not as closely follow the protected speech, Brownell's statements in the newspaper, and the testimony of a male police officer that Brownell was "vindictive," support an inference that the adverse employment actions were at least in part caused by Kercado-Clymer's protected speech.

Finally, at the time of the alleged events, it was clearly established that a governmental entity "may not inflict an adverse employment decision upon an employee in retaliation for the employee's exercise of [her] First Amendment rights." *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 107 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Catletti ex rel. Estate of Catletti v. Rampe*, 334 F.3d 225, 231 (2d Cir. 2003); *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 211 (2d Cir. 2002) ("The employee's right to be free from such retaliation has been clearly established since at least 1968.").

We have considered the remainder of Brownell's arguments and conclude that they lack merit. Accordingly, for the foregoing reasons, the decision of the district court denying Brownell summary judgment based on qualified immunity on Kercado-Clymer's hostile work environment claims brought under section 1983 and the NYHRL is **REVERSED**. The decision of the district court is otherwise **AFFIRMED**. This case is **REMANDED** for further proceedings consistent with this opinion.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK