# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1303

CA 13-00348

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, SCONIERS, AND WHALEN, JJ.

---

DAWN CALHOUN, PLAINTIFF-APPELLANT,

V                                                              MEMORANDUM AND ORDER

COUNTY OF HERKIMER, HERKIMER COUNTY DEPARTMENT
OF SOCIAL SERVICES, HERKIMER COUNTY OFFICE OF
EMPLOYMENT AND TRAINING ADMINISTRATION, KARIN
ZIPKO, IN HER INDIVIDUAL AND OFFICIAL CAPACITY,
JEFF WHITTEMORE, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY, STEVEN BILLINGS, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITY, DEFENDANTS-RESPONDENTS,
ET AL., DEFENDANTS.

---

BOSMAN LAW FIRM, L.L.C., ROME (A.J. BOSMAN OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

LEMIRE JOHNSON, LLC, MALTA (GREGG T. JOHNSON OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS.

---

Appeal from an order and judgment (one paper) of the Supreme
Court, Herkimer County (Erin P. Gall, J.), entered October 30, 2012.
The order and judgment, among other things, granted the motion of
defendants for summary judgment dismissing the amended complaint.

It is hereby ORDERED that the order and judgment so appealed from
is unanimously modified on the law by denying that part of the motion
seeking to dismiss the retaliation claims and reinstating those
claims, and as modified the order and judgment is affirmed without
costs.

Memorandum:  This retaliation action arises from plaintiff's
employment with defendant Herkimer County Office of Employment and
Training Administration (Employment and Training Office) pursuant to a
contract between the Employment and Training Office and a nonprofit
service agency.  Plaintiff worked for defendant County of Herkimer
(County) in the Employment and Training Office for approximately six
years.  Defendant Steven Billings, who was then the County's Director
of Employment and Training, was plaintiff's supervisor.  In 2005,
Billings's wife (Mrs. Billings), a special education teacher, was
assigned to work with plaintiff's son, who had been classified as
learning disabled.  Beginning in October 2005, plaintiff expressed
dissatisfaction with the special education services provided to her
son by the school district generally and Mrs. Billings in particular.
In March 2006, plaintiff and her husband attended a contentious

meeting at the school with various parties, including Mrs. Billings. According to plaintiff, less than a week after that meeting, Billings advised plaintiff that her contract might not be renewed upon its expiration in April 2006 because of impending federal funding cuts. In a follow-up email to the school principal and a subsequent telephone conference with the principal and Mrs. Billings, plaintiff continued to object to the alleged failure of Mrs. Billings to provide services to plaintiff's son in accordance with his individualized education plan. Shortly thereafter, Billings notified plaintiff that her contract would not be renewed.

Plaintiff subsequently commenced this action alleging, inter alia, that defendants subjected her to unlawful retaliation based upon her advocacy on behalf of her son, alleging violations of, inter alia, the Americans with Disabilities Act (42 USC § 12101 *et seq.*) and the Human Rights Law (Executive Law § 290 *et seq.*). Defendants moved for summary judgment dismissing the amended complaint, and Supreme Court granted the motion. We note at the outset that plaintiff abandoned any claims not related to retaliation by failing to advance any contentions with respect to the merits thereof in her brief on appeal (*see Inter-Community Mem. Hosp. of Newfane v Hamilton Wharton Group, Inc.*, 93 AD3d 1176, 1177; *Davis v School Dist. of City of Niagara Falls*, 4 AD3d 866, 867). We conclude, however, that the court erred in granting that part of the motion with respect to plaintiff's retaliation claims, and we therefore modify the order and judgment accordingly.

In order to make out a claim for unlawful retaliation under state or federal law, a plaintiff must show that "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 313; *see Adeniran v State of New York*, 106 AD3d 844, 844-845; *see also Treglia v Town of Manlius*, 313 F3d 713, 719).

In order to establish entitlement to summary judgment in a retaliation case, a defendant may "demonstrate that the plaintiff cannot make out a prima facie claim of retaliation" or, alternatively, a defendant may "offer legitimate, nonretaliatory reasons for the challenged actions," and show that there are "no triable issue[s] of fact . . . whether the . . . [reasons are] pretextual" (*Delrio v City of New York*, 91 AD3d 900, 901; *see generally Forrest*, 3 NY3d at 305). Here, although we agree with the court that defendants met their initial burden on the motion under the first of the two tests set forth in *Delrio* by submitting evidence that they were not aware of plaintiff's protected activity and that, in any event, there was no causal connection between her protected activity and the failure to renew her contract (*see Brightman v Prison Health Serv., Inc.*, 108 AD3d 739, 741), we conclude that plaintiff raised an issue of fact with respect to each of those two elements of her prima facie case (*cf. id.* at 742).

With respect to the element of defendants' awareness of plaintiff's protected activity, plaintiff submitted Billings's deposition testimony, in which Billings acknowledged that, during the course of plaintiff's employment, he became aware that plaintiff's son was a student of his wife and that plaintiff was "not happy with things that were happening at the school." Billings further acknowledged that, at some point, he specifically learned that "there was an issue" between plaintiff and his wife concerning plaintiff's son. Plaintiff also submitted her own deposition testimony, in which she testified that, after the dispute with the school escalated, "all of a sudden [Billings] started making little comments" to her that suggested that he had discussed plaintiff's son with his wife. On one occasion, for example, plaintiff told Billings that she had a meeting at the school, and Billings made a comment to the effect of "going up to fight with the school again[?]" or "[g]o get them." Plaintiff's husband similarly testified at his deposition that, after the March 2006 meeting at the school, Billings became "very hostile" toward him and told him that, "by pursuing this, [plaintiff] made it really uncomfortable for [Billings's] wife." We thus conclude that plaintiff set forth sufficient circumstantial evidence from which a trier of fact could reasonably infer that Billings was aware of plaintiff's advocacy on behalf of her son (*see generally Gordon v New York City Bd. of Educ.*, 232 F3d 111, 117).

With respect to the element of a causal connection, we note that such element "may be established either '*indirectly* by showing that the protected activity was followed closely by [retaliatory] treatment, . . . or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant' " (*Johnson v Palma*, 931 F2d 203, 207, quoting *DeCintio v Westchester County Med. Ctr.*, 821 F2d 111, 115, *cert denied* 484 US 965; *see Gordon*, 232 F3d at 117; *Sumner v U.S. Postal Serv.*, 899 F2d 203, 209). Here, plaintiff's submissions raise an issue of fact relative to causal connection both indirectly and directly. Plaintiff established a causal connection indirectly by submitting evidence that her protected activity was followed closely, i.e., within a few days or weeks, by Billings's decision to terminate her contract, thus raising an issue of fact based upon temporal proximity (*see Cioffi v Averill Park Cent. Sch. Dist. Bd. of Ed.*, 444 F3d 158, 168, *cert denied* 549 US 953; *cf. Matter of Pace Univ. v New York City Commn. on Human Rights*, 85 NY2d 125, 129). In addition, plaintiff established a causal connection directly by submitting evidence of retaliatory animus on the part of Billings through her own testimony and that of her husband (*see DeCintio*, 821 F2d at 115).

Defendants also established their entitlement to summary judgment under the second of the two tests set forth in *Delrio*, by articulating legitimate, nonretaliatory reasons for the challenged employment action. The burden thereby shifted to plaintiff to produce evidence that the reasons put forth by defendants were merely pretextual or that, "regardless of any legitimate motivations the defendant may have had, the defendant was motivated at least in part by an impermissible motive" (*Brightman*, 108 AD3d at 741; *see Treglia*, 313 F3d at 721; *Johnson*, 931 F2d at 207; *see generally Gordon*, 232 F3d at 118; *Sumner*,

899 F2d at 208-209).  Viewing the evidence in the light most favorable to the plaintiff, as we must, we conclude that "a reasonable jury could find that the [nonretaliatory] reasons given by [defendants] were pretextual explanations meant to hide [their] unlawful motive" (*Treglia*, 313 F3d at 721; *see Cioffi*, 444 F3d at 168).  Although defendants assert that they did not renew plaintiff's contract for financial reasons, i.e., anticipated federal budget cuts, plaintiff presented evidence that her position was funded in substantial part by defendant Herkimer County Department of Social Services, which did not reduce its funding for the position; that the actual funding cuts were much lower than anticipated, i.e., 14% compared to 28%; and that she was the only person affected by the funding cuts.  Even if the loss of federal funding were one of the reasons for the decision not to renew plaintiff's contract, we conclude that the timing and circumstances of the nonrenewal suggest that impermissible retaliation may have played a part in the decision (*see Gordon*, 232 F3d at 117-118; *Sumner*, 899 F2d at 208-209; *Brightman*, 108 AD3d at 741).  Although the possibility of federal funding cuts loomed as early as January 2006, plaintiff testified that Billings had always assured her that, if funding were lost, the County would find a place for her.  It was not until shortly after the situation at the school escalated in March 2006 that Billings informed plaintiff that her contract might not be renewed.  Billings ultimately advised plaintiff that her contract had been terminated shortly after she participated in a tense telephone conference with Mrs. Billings and the school principal.  We thus conclude that plaintiff set forth sufficient evidence of pretext or mixed motives to survive defendants' motion for summary judgment (*see Sandiford v City of N.Y. Dept. of Educ.*, 22 NY3d 914, 916), and that "[i]t is the province of a jury to weigh the evidence, assess credibility, and ultimately determine whether defendants' actions were retaliatory" (*Asabor v Archdiocese of N.Y.*, 102 AD3d 524, 529).

Entered:  February 14, 2014                    Frances E. Cafarell
                                               Clerk of the Court